**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL -9 2025

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

Michael Kourosh Sadeghi _____, Plaintiff

v.

See attached pages I-IV please _____,

**Jury Trial requested:**
(please check one)
✓ Yes ____ No

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

**PRISONER COMPLAINT**

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Michael K. Sadeghi - 202300012988, A.C.D.F., 150 N. 19th Ave., P.O. Box 5001, Brighton, Co. 80601
(Name, prisoner identification number, and complete mailing address)

Mike
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

√    Pretrial detainee
___    Civilly committed detainee
___    Immigration detainee
___    Convicted and sentenced state prisoner
___    Convicted and sentenced federal prisoner
√    Other: *(Please explain)* Pretrial from overturned conviction on remand

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Please see attached pages 1-3
                    (Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_____

_____

Defendant 1 is being sued in his/her ___ individual and/or ___ official capacity.

2

Defendant 2: _____

(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _____

(Name, job title, and complete mailing address)

_____

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*). Briefly explain:

_____

_____

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

✓    State/Local Official (42 U.S.C. § 1983)

___    Federal Official
As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

✓ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

✓    Other: (*please identify*) 42 U.S.C. § 1781 Equal Rights, 42 U.S.C. § 1985 Conspiracy
28 U.S.C. § 1367

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Please see attached pages 4 - 38.

Claim one is asserted against these Defendant(s):

Supporting facts:

4

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ✓ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                    Please see attached page number 39.

Docket number and court:                    _____

Claims raised:                              _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)  _____

Reasons for dismissal, if dismissed:        _____

Result on appeal, if appealed:              _____

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

         ~~Yes~~ ~~No (check one)~~ N//A

Did you exhaust administrative remedies?

         ~~Yes~~ ~~No (check one)~~ N//A

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Please see attached pages 40 & 41.

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*Mike Sadeghi*
(Plaintiff's signature)

7/4/2025
(Date)

(Revised November 2022)

6

## DEFENDANTS TO CIVIL ACTION
### Preliminary Statement

Plaintiff contends Defendants listed below conspired individually & jointly & did violate his Federal & state Constitutional rights in violation of United States & Colorado laws, & precedent. The misconduct & wrongs are ongoing.

Each Defendant acted under color of law within the scope of their employment & are being sued in their individual &/or official capacities.

Defendant 1: Adams County, Colorado.

Defendant 2: Board of County Commissioners of Adams County, Colorado.

Defendant 3: City of Thornton, Colorado.

Defendant 4: Thornton Police Department (T.P.D.)

I

## DEFENDANTS TO CIVIL ACTION

Deferdant 5: Seventeenth Judicial District, District
Attorney Brian Mason.

Deferdant 6: Seventeenth Judicial District, Cheif
Trial Deputy Stephanie Fritts.

Deferdant 7: Seventeenth Judicial District, Deputy
District Attorney Kimberly Hinton.

Deferdant 8: Seventeenth Judicial District, District
Attorney Office Investigator Ernie Romero.

Deferdant 9: Seventeenth Judicial District, District
Attorney Office Investigator Joe Maier.

Deferdant 10: Adams County Cheif Coroner Monica
Broncucia Jordan.

Deferdant 11: Adams County Coroner Stepher Cina.

II

## DEFENDANTS TO CIVIL ACTION

Defendant 12: T.P.D. Cheif of Police Jim Baird.

Defendant 13: T.P.D. Detective John Casey Browning.

Defendant 14: T.P.D. Detective Doug Parker.

Defendant 15: T.P.D. Detective Randy Goin.

Defendant 16: T.P.D. Detective Bryan Adair.

Defendant 17: T.P.D. Sergeant Fred Dudley.

Defendant 18: T.P.D. Detective Scott Hendrickson.

Defendant 19: T.P.D. Officer Lucas Kimerer.

Defendant 20: T.P.D. Sergeant Abraham White.

Defendant 21: T.P.D. Detective Ian Ranshaw.

Defendant 22: T.P.D. Detective Bryan Benet.

Defendant 23: T.P.D. Officer Ian Bartlett.

Defendant 24: T.P.D. Sergeant Steven Horner.

Defendant 25: T.P.D. Officer Adam Richardson.

Defendant 26: T.P.D. Officer Chris McMahon.

Defendant 27: T.P.D. Officer Ryan Booco

Defendant 28: T.P.D. Sergeant Jerae Husk

Defendant 29: T.P.D. Officer Kevin Lawrence

Defendant 30: T.P.D. Officer Matthew Cushing

Defendant 31: T.P.D. Officer Clarendon Tate

Defendant 32: T.P.D. Officer Maurice Mansfield

III

## DEFENDANTS TO CIVIL ACTION

Defendant 33: T.P.D. Crime Scene Investigator (C.S.I.) Heather Hatfield.

Please Note: The following Defendant is a private defendant but is implicated in this action under conspiracy & Joint Participation Doctrine:

Defendant 34: Victoria Scheber, A.K.A. Victoria Diles, A.K.A. Victoria Branaghan.

John/Jane Does that may be implicated upon further investigation as well as other unknown employees of the Seventeenth Judicial District District Attorneys Office & unknown employees of the T.P.D.

IV

## B. DEFENDANTS INFORMATION

### Preliminary Statement

Plaintiff contends Defendants listed below conspired individually & jointly & did violate his federal & state constitutional right in violation of United States & Colorado laws, & precedent. The misconduct & wrongs are ongoing.

Each Defendant acted under color of law within the scope of their employment & are being sued in their individual &/or official capacities.

Defendant 1:   Adams County, Colorado, 4430 South Adams County Parkway, Brighton, CO. 80601.

Defendant 2: Board of County Commissioners of Adams County, Colorado.  4430 South Adams County Parkway, Brighton, CO. 80601.

Defendant 3:   City of Thornton, Colorado. 9500 Civic Center Drive, Thornton, CO. 80229.

Defendant 4:   Thornton Police Department (T.P.D.) 9551 Civic Center Dr., Thornton, CO. 80229.

Defendant 5:   Seventeenth Judicial District, District Attorney Brian Mason.  1000 Judicial Center Drive, Brighton, CO. 80601.

Defendant 6:   Seventeenth Judicial District, Chief Trial Deputy Stephanie Fritts.  1000 Judicial Center Drive, Brighton, CO.  80601.

Defendant 7:   Seventeenth Judicial District, Deputy District Attorney Kimberly Hinton.  1000 Judicial Center Drive, Brighton, CO.  80601.

Defendant 8: Seventeenth Judicial District, District Attorney Office Investigator Ernie Romero. 1000 Judicial Center Drive, Brighton, CO.  80601.

Defendant 9:   Seventeenth Judicial District, District Attorney Office Investigator Joe Maier. 1000 Judicial Center Drive, Brighton, CO.  80601.

Defendant 10: Adams County Chief Coroner Monica Broncucia Jordon.  330 N. 19th Ave. Brighton, CO.  80601.

Defendant 11: Adams County Coroner Stephen Cina.  330 N. 19th Ave.  Brighton, CO.  80601.

Please Note: For the following T.P.D. Defendants the address is: 9551 Civic Center Dr. Thornton, CO.  80229.

1

## B. DEFENDANTS INFORMATION

Defendant 12: T.P.D. Chief of Police Jim Baird.

Defendant 13: T.P.D. Detective John Casey Browning.

Defendant 14: T.P.D. Detective Doug Parker.

Defendant 15: T.P.D. Detective Randy Goin.

Defendant 16: T.P.D. Detective Bryan Adair.

Defendant 17: T.P.D. Sergeant Fred Dudley.

Defendant 18: T.P.D. Detective Scott Hendrickson.

Defendant 19: T.P.D. Officer Lucas Kimerer.

Defendant 20: T.P.D. Sergeant Abraham White.

Defendant 21: T.P.D. Detective Ian Ranshaw.

Defendant 22: T.P.D. Detective Brian Bennet.

Defendant 23: T.P.D. Officer Ian Bartlett.

Defendant 24: T.P.D. Sergeant Steven Horner.

Defendant 25: T.P.D. Officer Adam Richardson.

Defendant 26: T.P.D. Officer Chris McMahon.

Defendant 27: T.P.D. Officer Ryan Booco.

Defendant 28: T.P.D. Sergeant Jenae Husk.

Defendant 29: T.P.D. Officer Kevin Lawrence.

Defendant 30: T.P.D. Officer Matthew Cushing.

Defendant 31: T.P.D. Officer Clarendon Tate.

Defendant 32: T.P.D. Officer Maurice Mansfield.

Please Note: The following Defendants are being sued for their acts/omission while employed with the T.P.D.:

Defendant 33: T.P.D. Crime Scene Investigator (C.S.I.) Heather Hatfield. Future Forward at Washington Square 12521 Washington St. Thornton, CO. 80241.

2

## B. DEFENDANTS INFORMATION

Please Note:   The following Defendant is a private defendant but is implicated in this action under conspiracy & Joint Participation Doctrine:

Defendant 34: Victoria Scheber, A.K.A. Victoria Diles, A.K.A. Victoria Branaghan.  5714 E. 124th Way, Brighton, CO.  80602.

Other John/Jane Does that may be implicated upon further investigation as well as other unknown employees of the Seventeenth Judicial District District Attorneys Office & unknown employees of the T.P.D.

3

## D. STATEMENT OF CLAIMS
### Preliminary Statements

Plaintiff contends alleged due process violations are primarily substantive in nature. As such Parratt abstention should not apply. See Bledsoe v. Carreno 53 F.4th 589 10th Cir. 2022.

The plaintiff in this action is the Defendant in Adams County Colorado case 18CR1190 that has been overturned on direct appeal due to structural error of the then presiding Judge's erroneous reasonable doubt analogy that was backed & supported by current prosecutors on remand. The Mandate issued on 7/14/23, see Exhibit 18.

During the first trial Plaintiff was able to secure a personal family loan for private counsel. The plaintiff has been incarcerated for over seven years & is without family/financial means to hire private counsel as he was before the constitutional misconduct committed against him. The plaintiff contends he should at least be restored to his original financial situation condition before the tort was committed against him & able to claim at least the amount spent on private attorney fees during the first trial.

Since Plaintiff won his appeal & suffered damages, Plaintiff contends that the bar pursuant to Heck v. Humphrey 512 US 477...114 S.Ct. 2364 (1994) should not apply since "A claim for damages for an allegedly unconstitutional conviction or imprisonment, or other actions whose unlawfulness would render a conviction or sentence invalid, is not cognizable under 42USCS §1983 unless the Plaintiff proves that the conviction or sentence has been reversed on direct appeal.." Id.

If this Honorable court finds Younger/Heck/Comity/ Our Federalism &/or any other abstention does apply, Plaintiff requests this honorable court to set precedent, if none exists, in the limited regard of allowing recovery of attorney fees spent during the first trial that was overturned due to government constitutional violations.

Plaintiff also contends immunity should not apply to the claims in this complaint as "Suits against state officers in their individual capacities are not barred by the Eleventh Amendment in as much as such suits proceed on the theory that when officers act unconstitutionally, he is stripped of his official or representative character & is subjected to consequences of his official conduct." Medcalf v. Kansas 626 F. Supp (D.Kan.1986)

4

# D. STATEMENT OF CLAIMS
## Preliminary Statements

Plaintiff also contends Younger abstention should not apply because the state proceedings do not offer an adequate forum to litigate Federal constitutional claims as evidenced by ongoing misconduct & proof of an unconstitutional unfair trial that has been overturned on appeal & that Plaintiff has been in custody for over seven years.

Plaintiff also contends "that abstention is the exception, not the rule & should be rarely invoke." Brown b. Day 555 F.3d 882 (10th Cir. 2009).

Also relevant, "Qualified immunity bars damages claim but does not prohibit criminal prosecution or civil actions seeking injunctions, equitable, or prospective relief. "Understanding Civil Rights Litigation 3rd Ed". Howard M. Wasserman 2023.

Plaintiff also contends any qualified immunity should be lost since Defendants knowingly &/or with reckless disregard/deliberate indifference, violated clearly established constitutional rights & reasonable Officers in Defendants positions would not do so.

Claim One:    42 U.S.C.S §1983 Reckless Investigation

Claim One is Asserted Against These Defendants: T.P.D., Defendant T.P.D. Officers, Defendant Prosecutors, & Defendant Coroners.

Supporting facts: Plaintiff's 2019 conviction of alleged first-degree murder in Adams County Colorado District Court, case #18CR1190 was overturned on direct appeal, case #19CA1501. The mandate was issued on 7/14/23.

During more recent Proof Evident Presumption Great (P.E.P.G.) hearings on 2/2/24; 3/12/24; & 4/24/24, as well as limited viewing of discovery in case 18CR1190, Plaintiff has become aware of the following constitutional violations & reckless investigation as outlined in the claims of this complaint.

The misconduct/constitutional violations of Plaintiff's rights began on 3/27/2018 & continue to the present day as Plaintiff is being held in custody without bail against substantive due process violations including but not limited to Fourth Amendment violations of unreasonable seizure.

Specifically, T.P.D. Detectives Bryan Adair & Scott Hendrickson on 3/27/18 interviewed the only eyewitness Victoria Branaghan (A.K.A Victoria Diles, A.K.A. Victoria Scheber).

In the recorded video interview of Ms. Branaghan, she states her boyfriend Dustin Schmidt may have threatened Plaintiff, then gives reasons trying to justify why Mr. Schmidt did in fact threaten Plaintiff. See T.P.D. video interview at 9:56.40-9:57.10.

5

## D. STATEMENT OF CLAIMS

On 3/28/18 T.P.D. officer John Casey Browning signed the Warrantless Arrest Affidavit (W.A.A.) under oath & penalty of perjury, to establish probable cause for the charge of first-degree murder. The material statement of Mr. Schmidt's threats to Plaintiff were not on the W.A.A. & those facts were then fabricated to say Ms. Branaghan said, "Dustin never threatened Michael (Plaintiff)". See W.A.A. attached as Exhibit 1. Several other untrue & fabricated statements are on the W.A.A., including but not limited to: "Dustin went out and grabbed Bruno from their backyard and picked up Bruno and brought him back over the fence and spanked him a couple of times…" See W.A.A. Ex.1 pg. 2. Investigator Gary Rhoads report however, states: "…decedent jumped the fence and retrieved his dog…decedent had jumped the fence and was back in his own yar when the verbal altercation started." See Exhibit 2 pg. 1&2.

T.P.D. Officer Adam Richardson was also one of the first responding officers on scene. His report states in part, "While en route, dispatch advised that a male jumped a fence, and three to four shots were heard." Report of A. Richardson attached as Exhibit 3. This material fact was also withheld from the W.A.A., & other T.P.D. Officers never mention the material fact, showing conspiracy to omit/suppress exculpatory evidence in the investigation.

On 3/27/18 T.P.D. officers Chris McMahon & Ryan Booco were first to arrive on scene & contact Plaintiff while he was on the phone with 911 regarding the incident. Officer McMahon placed Plaintiff & his neighbor Victor Seaton in handcuffs face down on the ground. While in handcuffs, officer McMahon asked Plaintiff what happened. Plaintiff told the officers what happened & that "Mr. Schmidt threatened me after I told him I would call the cops if I saw him beating his dog again, he rushed at me appearing to be coming over the fence while reaching back for a weapon." None of these statements were in any of their reports & they allegedly were not wearing body cams at the time. None of these statements were included in the W.A.A. or further investigated.

Victor Seaton was interviewed by T.P.D. officer Randy Goin. During this interview Seaton stated he saw a person in Plaintiff's backyard with a shaved head & his first impression was that it was Dustin. See the recorded interview at 45:25-46:00. Victor Seaton also stated that Dustin Schmidt appeared to be in Plaintiff's backyard attempting to cut the dog loose. See Discovery pages 90-92, T.P.D., statement of Mr. Seaton attached as Exhibit 9.

Victor during the interview also remembered some of Plaintiff's statements to Officers McMahon & Booco while on the ground. See video interview of Seaton at 49:45-50:00.

None of these material facts were included in the W.A.A. & they were fabricated & changed to maliciously prosecute Plaintiff in case #18CR1190.

6

## D. STATEMENT OF CLAIMS

T.P.D. officer Chadron Parker was also one of the first officers on scene. In his report he states: "When I got to the southwest corner of the yard, I noticed a couple bright red spots on the ground, from training & experience, I recognized the spots to be consistent with blood."
C. Parker report attached as Exhibit. 4

C. Parker's report also states: "Prior to leaving the scene, I advised Detective Randy Goins of the possible blood I had seen in the backyard of 4624 East 107th Avenue near the fence. "
See Exhibit 4.

More recently, C. Parker also testified to these facts at the P.E.P.G. hearing on 3/12/24. See TR 3/12/24 p13:16-25; p14:1-9; p14:21-25; & p17:11-24. Officer C. Parker also testified that Randy Goin was suppose to notify T.P.D. Officer CSI Heather Hatfield as she was tasked with processing the scene, see TR 3/12/24 p18:5-17.

Again, this material evidence was never further investigated or documented & was omitted from the W.A.A. by all other T.P.D. Officers in their reports, investigations & photographing the scene, nor did they collect samples to analyze DNA.

T.P.D Officer Booco was tasked with performing a crime scene log by Officer Abraham White, Officers Adam Richardson, Jenae Husk, Fred Dudley, Maurice Mansfield, Claredon Tate, Kevin Lawrence, Steven Horner, Bryan Bennet, Lucas Kimerer, other John/Jane Does, & Doug Parker were all on scene &/or involved in the reckless investigation & failed to intervene in ensuring Plaintiff's constitutional rights would not be infringed upon.

T.P.D. Officer Doug Parker in his report also states: "I assisted Detective Browning with the filing of criminal charges against Michael Sadeghi with the Adams County D.A. office." See discovery page 380.

T.P.D. Officers B. Adair & S. Hendrickson during their video interview of Victoria Branaghan tell her they were going to have to search her home & when she starts to cry over these Officers statements, they tell her they are "not looking for anything crazy." T.P.D. video interview with Ms. Branaghan at 10:03.40. These Officers failed to investigate any evidence of weapons &/or drug use. At the time of the incident Mr. Schmidt had a B.A.C. of 0.083, see Exhibit 5, NMS lab report, & later at expense & request of Plaintiff, was tested for anabolic steroids & tested positive for Nandrolone & excess testosterone, see Exhibit 23.

Ms. Branaghan's previous roommate, Stephanie Koros, shared her knowledge with Plaintiff's family shortly after the incident, stating Ms. Branaghan used illicit drugs. See Exhibit 6. No T.P.D. Officers &/or Prosecutor Investigators followed those leads.

7

## D. STATEMENT OF CLAIMS

Defendant Prosecutors Stephanie Fritts, Kimberly Hinton, & 17th Judicial District Attorney Office Investigators Ernie Romero & Joe Maier were involved in these misconducts & constitutional rights violations during their involvement in the case in an investigative &/or administrative phase of the case & not in their roles as advocate for the state.

Joe Maier, Stephanie Fritts, T.P.D. Officers Heather Hatfield, Doug Parker & Ian Ranshaw, as well as John/Jane Does, were all present at the autopsy by Adams County Coroner Stephen Cina working under Chief coroner Monica Broncucia Jordan. During the autopsy photos of injuries to Mr. Schmidt's right wrist/hand area & inside of the left palm were observed & photographed. See photos p.1010326 right palm injury attached as Exhibit 7 & p1010330 left wrist injury attached as Exhibit 8.

These injuries to the decedent's hands were omitted from Stephen Cina's report & denied at the original trial. See TR 5/1/19 p 168:9-14, attached as Exhibit 10.

Defendant Prosecutors failed to investigate &/or knowingly excluded the exculpatory material facts of injuries to decedent's hands and evidence of decedent's fence climb/vault as well as decedent's threats.

During the P.E.P.G. hearings on 3/12/24, Prosecutor Fritts even goes to the extent of subornation of perjury from their eyewitness Victoria Branaghan, asking the leading question "And at no point did you see Mr. Schmidt climb that fence, correct?" See TR 3/12/24 p 74:5-7 attached as Exhibit 11. Prosecutors also mislead the court on 4/24/24 at the P.E.P.G. that denied Plaintiff Bail by stating "there's no defects on the fence, no trace evidence on the hands of Mr. Schmidt indicating that he was climbing the fence." See TR 4/24/24 p 8:1-3, attached as Exhibit 12. Defects to the fence are also well documented in this case in the CSI report, discovery pages 1279-1293.

Also, on 3/12/24 Ms. Branaghan (now Mrs. Scheber) testified under oath that Mr. Schmidt never threatened Plaintiff, then when confronted with previous testimony on 4/30/19 & previous statements to the T.P.D., she does admit to Mr. Schmidt threatening Plaintiff.

8

## D. STATEMENT OF CLAIMS

See TR 3/12/24 p41:16-25, attached as Exhibit 13.

(TR 3/12/24 P41:16-25)

Q Okay. And during this back and forth, does Mr. Schmidt
ever threaten Mr. Sadeghi?
A No.
Q Now, Ms. Scheber, you spoke with the detectives on that
March 27th date of 2018. In that conversation, did you tell the
detectives that Mr. Schmidt might have said he was going to kick
Mr. Sadeghi's ass?
A Yeah.
Q Okay. So fair to say that that's a threat?
A Yeah.

To Mrs. Scheber's admission of Mr. Schmidt's threat, Prosecutors yet again suborn perjury by asking the leading question, "…the only person you remember threatening the other was the defendant threatening to hurt Dustin; Correct? A. Yes. Yes." See TR 3/12/24 p 70:2-9, attached as Exhibit 14. These were material statements made under oath. On remand, Defendant Prosecutors are working under supervision of District Attorney Brian Mason.

Evidence also exists from which a reasonable inference may be drawn that Prosecutors used mock trials completed out of court to coach then Ms. Branaghan to give perjured testimony. See therapy record stating "Vicky discussed stress with mock trial sessions beginning in two weeks…" attached as Exhibit 15.

Plaintiff contends there is at least secondary/persuasive & perhaps binding precedent that would hold Prosecutors to qualified rather than absolute immunity & said immunity should be lost because Prosecutors, Officers, & Coroners were acting unconstitutionally. Defendants were acting under color of law within the scope of their employment & in their individual capabilities or policy makers/official capacities (see Monell claim).

Such precedent includes but is not limited to:

"Prosecutor accused of being party to conspiracy to suborn perjury enjoys qualified rather than absolute immunity." Gillmore v. Gold 632 F. Supp. 684 (EDNY 1986).

9

## D. STATEMENT OF CLAIMS

"Constitutional wrongs completed out of court are actionable even if they lead to immunized acts. Immunity for prosecutorial deeds does not whitewash wrongs completed during the course of investigation." Buckley v. Fitzsimmons 509 U.S. 259 (1993).

"Prosecutors enjoy absolute immunity for initiating criminal prosecution & presenting states case, but not for their alleged efforts to have witnesses testify falsely against persons falsely convicted of murder, because such conduct is similar to nature to fabrication of evidence during preliminary investigation & took place well before prosecutors could properly claim to be acting as advocates." Spurlock v. Whitley, 971 F. Supp. 1166. 167 F.3d 995 (6th Cir. 1999).

"State coroner is not immune from suit under 42 USCS §1983, where Plaintiff claims that he has been unlawfully imprisoned & detained in violation of his constitutional rights." Peter v. Stanczak 48 F.R.D. 426, 1969 U.S. Dist. LEXIS 13912 (D.I.11. 1969).

Plaintiff contends the acts/omissions of Defendants caused the judge in the P.E.P.G. hearing to receive improper evidence & erroneously consider denial of bail as well as probable cause to the alleged charge during the first preliminary hearing. The acts/omissions are constitutional violations including but not limited to Substantive/Procedural due process violations. Plaintiff has been incarcerated for over seven years & has/is suffering prejudice and damages.

"Suits against state officers in their individual capacities are not barred by the 11th Amendment inasmuch as such suits proceed on theory that when officer acts unconstitutionally, he is stripped of his official or representative character & is subjected to consequences of his official conduct." Medcalf v. Kansas, 626 F. Supp. 1179 (D. Kan 1986).

"Qualified immunity does not insulate state actors from violations of clearly established law." Doe v. Gustavos, 294 F. Supp. 2d 1003, 2003 U.S. Dist. LEXIS 21936 (E.D. Wis. 2003).

"In absence of binding precedent, court looks to whatever decisional law is available to ascertain whether law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, & district courts." Boyd v. Benton County, 374 F.3d 773, 2004 U.S. App. LEXIS 13242 (9th Cir. 2004).

# D. STATEMENT OF CLAIMS

"Law enforcement investigators were not entitled to qualified immunity in 42 USCS §1983 action by former prisoner who presented sufficient evidence to raise genuine issues of fact as to whether investigators coerced witness into testifying falsely against former prisoner, because if investigators coerced witness into perjuring himself, they knew that testimony was false & resulted in state using perjured testimony to convict defendant. "McMillian v. Johnson 88 F. 3d 1554 (11th Cir. 1996).

"Prosecutors are not immune from actions for equitable relief under 42 USCS §1983." Slavin v. Curry, 574 F.2d 1256, 1978 U.S. App. LEXIS 10737 (5th Cir. 1978).

"Where the alleged due process violations were concededly substantive in nature, Parratt abstention did not apply…" Bledsoe v. Carrero 53 F. 4th 589 (10th Cir. 2022).

"The suppression of evidence favorable to the accused violates due process where evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution…That obligation extends to police officers insofar as they must turn over potentially exculpatory evidence when they turn over investigation files to the prosecution. To prevail on a civil Brady-based due process claim against a police officer a plaintiff must demonstrate that the evidence in question was favorable to him, the police suppressed the favorable evidence & prejudice ensued because the suppressed evidence was material." Holloway v. City of Milwaukee 43 F.4th 760 2022.

The suppressed evidence of decedent's threats, fence climb/vault & plaintiff's belief that decedent was armed, were all material issues favorable to Plaintiff. Police & Prosecutors suppressed this favorable evidence & prejudice ensued by erroneously finding probable cause with a defective W.A.A. containing omitted exculpatory evidence that was material, thus constituting a fatal variance, binding Plaintiff over for trial using this defective W.A.A, robbing Plaintiff of a fair trial, & more recently continuing in the same pattern of misconduct during the P.E.P.G. hearings to deny Plaintiff bail.

T.P.D. Detective John Casey Browning on 2/2/24 at the P.E.P.G. admitted to knowingly withholding the material issue of Mr. Schmidt's threats. See TR 2/2/24 p47:18-25; p48:1-25; & p49: 1-20, attached as Exhibit 16.

"A variance is material if it substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense." United States v. McFadden 2015 CCA LEXIS 520.

11

## D. STATEMENT OF CLAIMS

Objectively reasonable Officers in Defendants' positions would have known their conduct was violating clearly established constitutional rights.

"The prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth was firmly established as of 1986." Bledsoe v. Carreno Supra.

Furthermore, "...act violating constitutional rights is no more justified by ignorance or disregard of settled, indisputable law than by presence of actual malice." Hoffman v. McNamara, 630 F.Supp 1257. 121. (D. Conn 1986).

"If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth & no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he can't be said to have acted in objectively reasonable manner." Zamora v. City of Belen 383 F. Supp. 2d 1315 2005.

During the first trial Plaintiff was able to secure a personal loan from his retired parents for private attorney fees. See Exhibit 17 showing port of expense of attorney fees. Now on the retrial Plaintiff is indigent.

Since Plaintiff has won his appeal in the related criminal action & has suffered damages, Plaintiff contends that the bar pursuant to Heck v. Humphrey 512 US 477 129 L.Ed. 2d 383, 114 S.Ct. 2364 (1994) should not apply as "A claim for damages for an allegedly unconstitutional conviction or imprisonment or other actions whose unlawfulness would render a conviction or sentence invalid is not cognizable under 42 USCS §1983 unless the Plaintiff proves that the conviction or sentence has been reversed on direct appeal..." Id.

See Mandate as proof of reversed conviction on direct appeal attached as Exhibit 18.

Plaintiff also contends that Federalism, Comity, Younger v. Harris, &/or any other form of Abstention should not apply because the state proceedings do not offer and adequate forum to litigate federal constitutional issues as evidence not only by the unconstitutional structural error that occurred (plus multiple other claimed judicial/prosecutorial misconduct claims that the Court of Appeals did not opine on) but also the ongoing misconduct as outlined in the claims of this complaint.

Plaintiff also contends "that abstention is the exception, not the rule, & should be rarely invoked." Brown v. Day 555 F.3d 882 887 (10th Cir 2009).

12

# D. STATEMENT OF CLAIMS

Plaintiff requests that if the court does find that any bar of immunity/abstention does apply, then this honorable court, in the interest of justice, should consider setting precedent if none exists, that allows a Plaintiff who is facing retrial & now indigent & unable to afford private attorney fees, when he was previously able to do so, to be able to claim damages of at least the private attorney fees he had lost so he can be restored to a similar condition before the torts/constitutional violations were committed.

Defendant Officers & Defendant Prosecutors also failed to disclose evidence of Ms. Branaghan lawsuit seeking over $100,000. This evidence was relevant to show bias & could have also been used to show bad faith motive as the discovery from the civil case 19CV30601 in Adams County, shows Ms. Branaghan's Facebook comment stating: "I will fight for you forever baby until this man rots or dies, I love you."

"Exculpatory evidence includes impeachment evidence." People v. Lowe 2020 COA 116.

"The due process principle that a state may not knowingly use false testimony to obtain a tainted conviction does not cease to apply merely because the false testimony goes only to the credibility of the witness." Napue v. Illinois 360 U.S. 267, 269, 3L.ed 2d 1217 79 S.Ct. 1173 (1959).

"In United States v. Bagley, 473 U.S. 667 (1985), the Court rejected any distinction between exculpatory & impeachment evidence for purpose of Brady v. Maryland, 373 U.S. 83 (1963). 473 U.S. at 676. We noted that nondisclosure of impeachment evidence falls within the general rule of Brady "when the "reliability of a given witness may well be determinative of guilt or innocence." Id., at 677, quoting Giglio v. United States, 405 U.S. ISO, 154 (1972).

In Plaintiff's case 18CR1190 that gives rise to the action, Ms. Branaghan was the only eyewitness & her testimony was heavily relied upon by the Prosecution to erroneously determine guilt.

The acts/omissions stated & supported by Exhibits in this complaint were & are fraudulent, egregious, outrageous, conscience shocking & are clear violations of substantive due process rights that are supposed to serve as safeguards to ensure fundamental fairness in alleged criminal proceedings leading to prosecutions, especially when the potential penalty is life in prison without the possibility of parole.

13

# D. STATEMENT OF CLAIMS

Claims Two & Three: Violation of Right to a Fair Trial. Federal Claim-42 U.S.C. §1983.

State Law Claim- C.R.S. 13-21-131 & Violation of Colo, Const. Art. II Section 7(Unlawful Seizure), Section 25 (Due Process), Section 3 (Inalienable Rights).

Claims Two & Three Are Asserted Against These Defendants: All Defendants except current District Attorney Brian Mason.

Supporting Facts: Plaintiff incorporates all other facts/precedent of this complaint as if fully applied here & relies on them as applicable in setting part of this claim.

Plaintiff contends all facts asserted in the reckless investigation claim also violated Plaintiff's right to a fair trial guaranteed by the Due Process clause of the Fourteenth Amendment & The Bill of Rights of the United States Constitution as well as Colorado Constitution Article II Section 7, Section 25, & Section 3.

In addition to the reckless investigation & use of perjured & other misleading testimony used during the first trial, Prosecutors, over Defense objection, supported the previous Judges giving of an erroneous reasonable doubt analogy amounting to structural error requiring automatic reversal.  See TR 4/29/19, p73:7-25 & p74:1-25, attached as Exhibit 19.  Prosecutors then went on to give their own erroneous reasonable doubt analogy similar to the structural error analogy in Tibbels v. People 2022 CO1 501 p.3d 792 while extracting a promise from a deliberating juror to apply the erroneous analogy similar to the structural error found in People v. Knobbe 2020 COA 7.

"The Due Process Clause of the United States Constitution 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged' In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970)" Tibbels Supra at p23.

"...both this court & the Supreme Court have repeatedly cautioned that attempts by trial courts to define 'reasonable doubt' in ways beyond the long-established pattern instructions do not often clarify the term, see Holland v. United States 348 U.S. 121, 140, 75 5.Ct. 127 99 L.Ed. 150 1954-2C.B. 215 (1954) ..." Tibbels Supra at p25.

"Therefore, structural error only applies to these constitutional rights that 'without those basic protections, a criminal trial cannot reliably serve it's function as a vehicle for determination of guilt or innocence & no criminal punishment may be regarded as fundamentally fair.' Fulminante

14

## D. STATEMENT OF CLAIMS

499 U.S. at 310 (quoting Rose v. Clark 478 U.S. 570-577, 106 S.Ct. 3101 92 L.Ed. 2d 460 (1986)" People v. Torrez COA II 2024.

These constitutional rights were firmly established well before Plaintiff's 2019 trial & objectively reasonable Officers would have known that Plaintiff's rights were being violated.

Furthermore, the record of TR 4/29/19 p120:22-25 shows Prosecutor Fritts knew that the analogy she used & approved of the then presiding judge, was flawed but chose to use them anyway. This shows intent & deliberate indifference.

As stated in the Reckless Investigation claim & the Conspiracy Claim, Plaintiff contends that Defendant T.P.D. Officers & Defendant Prosecutors/Investigators & Victoria Branaghan conspired to rob Plaintiff of a fair trial & maliciously prosecute him to the highest degree possible by omitting/suppressing exculpatory evidence & knowingly suborning perjured testimony.

"The United States Court of Appeals for 4th Cir. Recognizes that a police officer who withholds exculpatory information from the prosecutor can be liable under 42 U.S.C.S. §1983, but only where the Officers failure to disclose the exculpatory information deprived the §1983 Plaintiff of their right to a fair trial..." Zamora v. City of Belen Supra.

Plaintiff understands that Prosecutors enjoy absolute immunity for acting as advocates of the state, but Plaintiff also notes as stated previously: "...when officers act unconstitutionally, he is stripped of his official or representative character & is subjected to consequences of his official conduct." Medcalf v. Kansas 626 F. Supp. 1179 (D. Kan. 1986).

Plaintiff asks this honorable court to extend this/similar precedent or create new precedent if none exists in the limited circumstance, at least perhaps confined to structural error reversed convictions, to allow for damages of at least private attorney fees that were spent on the constitutionally defective trial when such action was also part of the municipalities policy, custom &/or usage, see Monell claim.

Plaintiff contends that Adams County Colorado & its Board of County Commissioners, where the Seventeenth Judicial District is located, maintained the policy, custom &/or usage of violating alleged criminal defendants' rights to a fair trial by using erroneous reasonable doubt analogies to define said standard thus lowering their burden of proof &/or shifting the burden to the defense. All Defendants were acting under color of law within scope of their employment & in their individual capacities or as policy makers see Monell claim.

15

## D. STATEMENT OF CLAIMS

Defendant Victoria Scheber (A.K.A. Victoria Branaghan/Victoria Diles) is a private defendant who conspired with Defendant Officers & Prosecutors in joint participation to violate Plaintiffs' right to a fair trial.

"Private defendant faced with 42 U.S.C.S. §1983 liability for conspiracy with state officials to violate federal rights is not protected by doctrine of qualified immunity." Toussie v. Powell, 323 F.3d 176 2003.

As noted by Exhibit 15 showing "stress with mock trials, "& evidence of perjured testimony regarding the material issue of Mr. Schmidt's threats, see Exhibits 13 & 14, as well as T.P.D. video interview at 9:56.40-9:57.10, Mrs. Scheber is a key cause/contributor to Plaintiff's constitutional rights violations.

Several other instances of Mrs. Scheber's conspiracy with Defendant Officers & Prosecutors show efforts to suppress/omit exculpatory evidence & change/fabricate evidence to maliciously prosecute Plaintiff. These other instances of material omissions/altercations include but are not limited to:

Testimony regarding the material issue of whether the decedent ran inside the home when Plaintiff yelled from his upstairs window "Hey neighbor is everything alright?" and then came back outside to confront the Plaintiff. See TR 3/12/24 p68:2-4 compared to p37:20-25, p38:1-9 & the W.A.A. as well as the T.P.D. video interview at 9:57.40.

Testimony regarding the material issue over Branaghan's screaming "Stop it" being due to the dog being beat as the physical evidence shows vs. prosecutors misleading the court & suborning perjured testimony that the "stop it" comment was due to Plaintiff & Mr. Schmidt alleged arguing. The physical evidence of the Nest Cam clearly shows the "stop it" comment from Branaghan several minutes before plaintiff ever went outside. See TR 3/12/24 p68:9-16 compared to p36:1-4; p79:9-25; p80:1-25; p81:1-15; & TR 4/30/19 p164:6-9.

Prosecutors' subornation of perjury regarding the material of fact of whether Plaintiff was "…visibly angry when he came out?" See TR 3/12/24 p66:4-18 & 67:15-17 compared to p40:1-7 & TR 4/30/19 p161:1-25 attached as Exhibit 21.

Prosecutors can be seen eliciting false perjured testimony about material comments of Ms. Branaghan regarding the fact of Mr. Schmidt's intent to confront Plaintiff by stating "Dustin was like 'You're going to talk shit, I'm going to go down'." See T.P.D. video interview at 9:40.37 compared to TR 3/12/24 p69:19-25 & TR 4/30/19 p162:1-16 attached as Exhibit 22.

16

## D. STATEMENT OF CLAIMS

In addition to previous mention & Exhibits showing prosecutors subornation of perjured testimony regarding decedent's fence climb/vault & threats made to Plaintiff, Prosecutors were aware that Ms. Branaghan was allegedly not paying attention at the time of the incident, see TR 3/12/24 p42:21-25; p43:12-25; p44:1-16, & 73:7-14, compared to p74: 5-7 Exhibit 11. This shows Prosecutors misleading the court by subornation of perjury.

This is also palpably incredible testimony that should be rejected as a matter of law. "It is testimony as to facts which the witness physically could not have observed or events that could not have happened under the laws of nature." People v. Ramirez 30 p.3d 807 (Colo. App. 2001).

"See, e.g. Day v. State, 92 Wis. 2d 392, 400, 284 N.W. 2d 666 (1979). Accord, United States v. Emerson, 128 F.3d 557, 561 (7th Cir. 1997) ("unbelievable on its face, physically impossible for the witness to observe, or contrary to the laws of nature"); United States v. Garner, 581 F.2d 481, 485 (5th Cir. 1978) ("Unbelievable on it's face [that is] facts that (the witness) physically could not have possibly observed or events that could not have occurred under the laws of nature")" Ramirez Supra.

These constitutional due process rights against using perjured testimony & palpably incredible testimony to secure a conviction & thus violate Plaintiff's right to a fair trial were firmly established & reasonable prosecutors would have known about these rights & not engaged in such constitutionally violative misconduct.

Such conduct also violates "The Colorado Rules of Professional Conduct (C.R.P.C.) adopted by this court the ABA standards also require…The Prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw." Domingo-Gomez v. People 125 p.3d 1093, 1049 (Colo. 2006).

Also relevant: "The district attorney has the duty to prevent conviction on misleading or perjured evidence," DeLuzio v. People 177 Colo. 389, 494 p,2d 589 (1972),

"Perjured testimony & suppressed evidence constitute due process violations." Id.

Plaintiff contends all the errors presented in the opening brief of 19CA1501 should also be considered in this claim in addition to the errors clearly outlined. The fact that the Court of Appeals did not rule on these errors since the structural error required automatic reversal, does not mean these errors did not occur and will not reoccur.

17

## D. STATEMENT OF CLAIMS

For the sake of brevity, Plaintiff asks this honorable court to take Judicial Notice of the opening brief in 19CA1501 for full details of all those errors. Plaintiff contends those errors include but is not limited to: Prosecutors distorting the meaning of after deliberation by using a subway sandwich ordering analogy; Persuading jurors that gun owners must meet a "higher standard" to satisfy self-defense; objecting to & thus limiting defendant's theory of defense instruction; objecting to & thus limiting statutory self-defense instructions & apparent necessity instructions; admitting excessive number of scene/autopsy photos that were overly graphic; Prosecutors implying a Government screening process & Government Bolstering during their key expert witness testimony; & prejudicial/erroneous comments in closing arguments.

Said constitutional rights violations of due process & the right to a fair trial were committed by Defendant Prosecutors, Defendant T.P.D. Officers, & Defendant Victoria Scheber acting in concert starting in the investigation phase of the proceedings sharing the common goal to unconstitutionally deprive Plaintiff of due process & a right to a fair trial.

"Defendants assent can be inferred from acts furthering the conspiracy's purpose." Bledsoe v. Carrero Supra, such as "concerted action takes to advance that goal" Id by holding mock trials & planning on using perjured testimony & false misleading evidence/testimony during trial.

18

## D. STATEMENT OF CLAIMS

<u>Claims Four & Five:</u> Franks v. Delaware Claim- 42 USC §1983 & False/Misleading Information in a Warrantless Arrest Affidavit State Law Claim – C.R.S. 13-21-131, Colorado Const. Art II, Section 7 (unlawful seizure), Section 25 (Due Process), Section 3 (inalienable rights)

<u>Claims Four & Five Are Asserted Against These Defendants:</u> T.P.D. Officers who helped draft the W.A.A., John Casey Browning, Doug Parker, Bryan Adair, Scott Hendrickson, Fred Dudley, & other John/Jane Does.

<u>Supporting Facts:</u> Plaintiff incorporates all other facts/precedent of this complaint as if fully applied here & relies on them as applicable in setting part of this claim.

As mentioned in part in the Reckless Investigation claim, on 3/28/18 T.P.D. Defendant Officers John Casey Browning, Doug Parker, Bryan Adair, Scott Hendricks, Fred Dudley & other potential John/Jane Does that may become known from Discovery, all had a role in drafting the W.A.A. that contained material omissions of exculpatory information & knowing fabricated exculpatory statements to inculpatory statements from the video interview of the eye witness Victoria Branaghan. The material alterations in the W.A.A., had they not been altered, would have vitiated or diluted the probable cause to the alleged charge.

Specifically, Defendants Bryan Adair & Scott Hendrickson interviewed Ms. Branaghan & knew she tried to justify the reasons Mr. Schmidt threatened Plaintiff. See T.P.D. video interview at 9:56.40-9:57.10.

On 3/28/18 when John Casey Browning, with the help of Doug Parker (see discovery page 380) & having viewed the video interview of Ms. Branaghan beforehand, knowingly omitted the exculpatory facts of Mr. Schmidt's threats & fabricated statement's that "Dustin never threatened Michael." Defendant John Casey Browning on 2/2/24 admitted to knowingly & selectively omitting the exculpatory statements. See TR 2/2/24, p47:18-25; p48:1-25, & p49:1-20, attached as Exhibit 16.

Other T.P.D. Defendant Officers acting in concert either knowingly, intentionally, &/or with reckless disregard/deliberate indifference assisted Defendants Browning, Parker, Adair, Hendrickson, Dudley &/or John/Jane Does to omit exculpatory evidence & fabricate inculpatory statements in the W.A.A. to establish probable cause & hold Defendant without bail & see through criminal prosecution on these erroneous facts.

19

## D. STATEMENT OF CLAIMS

Defendants' acts/omissions caused Plaintiff to be robbed of his constitutional rights under Franks v. Delaware 438 U.S. 154 (1978) & the Fourth & Fourteenth Amendments against unlawful/unreasonable seizures. These were United States Constitution & Colorado State due process violations. Defendants were acting under color of law within scope of their employment & their individual capacities. Reasonable Officers in the Defendants' position would have known that those rights were clearly established & that omissions of exculpatory evidence & fabrication of evidence in the W.A.A. would cause substantial due process violations.

"The prohibition on falsifications or omission of evidence, knowingly or with reckless disregard for the truth was firmly established as of 1986." Bledsoe Supra.

"If an Officer submitted an affidavit that contained statements he knew to be false of would have known were false had he not recklessly disregarded the truth & no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he can't be said to have acted in an objectively reasonable manner." Zamora Supra.

"Moreover a §1983 conspiracy claim for using fabricated or false evidence was clearly established before 1999. See Anthony v. Baker 767 F.2d 657, 662 (10th Cir. 1985) (recognizing 'that state & federal officers are liable under §1983…when they conspire to procure groundless state indictments & charges against a citizen based upon fabricated evidence, or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizens trial or conviction')" Bledsoe Supra.

"Where an officer knows, or has reason to know, that he has materially mislead a magistrate on the basis of finding probably cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost." Zamora v. City of Belen Supra.

"Under 42 USCS §1983 a law enforcement officer may violate the Fourth Amendment if he/she knowingly or recklessly omits information from an arrest affidavit which, if included would have vitiated probably cause." Id.

Defendant Browning had Defendant McMahon's report available & used portions of the report in drafting his W.A.A., see Exhibit 1, pg. 1. Browning, however, selectively excluded exculpatory statements that could show Mr. Schmidt was armed with a knife & was in Plaintiff's backyard. See discovery pages 129/396/12225 McMahon's report stating, "Victor thought that (VI) Dustin Schmidt was in Michael's yard attempting to cut the dog loose."

20

## D. STATEMENT OF CLAIMS

Defendant Browning also relied on Defendant Goin's report & investigation in drafting the W.A.A. Exhibit 1, pg. 1.  Browning also knowingly selectively excluded specific exculpatory statements from these reports that show evidence of Mr. Schmidt's threats & attempted attack, see Goin video interview of Victor Seaton at 49:45-50:00, 1:03.20, & evidence that Mr. Schmidt was in Plaintiff's backyard, see video interview at 45:25-45:55 & 53:30.

Browning also had knowledge of Plaintiff's 911 call reporting the incident, see discovery page 171, "Please please I need help…the guy came at me through the backyard…" Yet none of those statements were on the W.A.A.

## D. STATEMENT OF CLAIMS

<u>Claims Six & Seven:</u> 42 U.S.C.S. §1983- Failure to Intervene- & State Law Claim, C.R.S. 13-21-131; Colo. Const. Art. II, Section 7 (unlawful seizure), Section 25 (due process), Section 3 (inalienable rights) – Failure to Intervene

<u>Claims Six & Seven Are Asserted Against These Defendants:</u> All Defendants.

<u>Supporting Facts:</u> Plaintiff incorporates all other facts/precedent of this complaint as if fully applied here & relies on them as applicable in setting part of this claim.

All T.P.D. Officers & Prosectors & their Investigators as well as potential John/Jane Does, that may be known with proper discovery, had an affirmative duty to intervene & protect the constitutional rights of Plaintiff from infringement in the phases of the Reckless Investigation all the way to preventing an Unfair Trial.

Each Defendant had opportunities to prevent/stop violations of Plaintiff's constitutional rights but failed to do so in an objectively unreasonable manner & did so intentionally with malice &/or reckless indifference.

On 6/10/25 emails were sent to the T.P.D. and the 17th Judicial District Adams County Colorado, through their web site messaging portal asking for an investigation and to bring these issues to the attention of Chief of Police Jim Baird and District Attorney Brian Mason, no response was made.

Reasonable Police Officers & Prosecutors in Defendants positions knew/should have known that this right/duty was firmly established & that their failure to intervene would cause constitutional due process violations.

"All law enforcement officials have an affirmative duty to intervene to protect the constitutional right of citizens from infringement by other law enforcement officers in their presence." Bledsoe Supra.

All Defendants were acting under color of law within the scope of their employment & their individual capacities. The misconduct in this claim is also a result of final policy makers & pursuant to the policy, practices, customs, &/or usages as more fully set forth in the Monell claim. All T.P.D. Officers on scene had an opportunity to hear the statements Victoria Branaghan had made to C.S.I. Heather Hatfield &/or talk to her or other John/Jane Does, as reported by Gary Rhoads (Exhibit 2). No T.P.D. Officers reported this material information on Mr. Schmidt's fence jump & even went to the extent of changing this statement & fabricating evidence/testimony to say Mr. Schmidt was never on the fence.

22

## D. STATEMENT OF CLAIMS

First on scene Officers Chris McMahon & Ryan Booco each had an opportunity to hear Plaintiff's statements that Mr. Schmidt appeared to be coming over the fence & reaching for a weapon, but those material statements were also omitted from their reports & the W.A.A.

John Casey Browning, assisted by Doug Parker (see discovery page 380) had knowledge of the video interview of Ms. Branaghan admitting Mr. Schmidt may have threatened Plaintiff then justifies why he did (T.P.D. video interview at 9:56.40-9:57.10, also see Exhibit 16). Officers Bryan Adair & Scott Hendrickson conducted the video recorded interview that Browning & Parker used & omitted exculpatory statements & fabricated false statements to falsely establish probable cause. T.P.D. Sergeant Fred Dudley notarized the W.A.A.

All these government Officers involved in the investigation & investigative/administrative phase of the prosecution observed, knew, &/or actively participated in violating Plaintiff's constitutional rights, each Defendant Officers/Prosecutors had a realistic opportunity to intervene but failed to do so.

23

## D. STATEMENT OF CLAIMS

<u>Claims Eight & Nine:</u> 42 U.S.C.S. §1983- Fabrication of Evidence-& State Law Claim C.R.S. 13-21-131; Colo. Const. Art II, Section 7 (unlawful seizure), Section 25 (due process), Section 3 (inalienable rights)-Fabrication of Evidence.

<u>Claims Eight & Nine Are Asserted Against These Defendants:</u> Defendant T.P.D. Officers, Defendant Prosecutors, John/Jane Does, Victoria Scheber (A.K.A. Victoria Diles/Branaghan) & Defendant Coroners.

<u>Supporting Facts:</u> Plaintiff incorporates all other facts/precedent of this complaint as if fully applied here & relies on them as applicable in setting part of this claim.

As set forth in the other claims, Defendant T.P.D. Officers who were involved in the investigation into this case omitted exculpatory evidence from their reports/investigation, & fabricated statements in their reports & W.A.A. to establish probable cause.

Defendant Prosecutors also during their investigation & administrative phase, engaged in similar misconduct of omitting exculpatory evidence, & did so at the preliminary hearing & the Proof Evident Presumption Great hearing on remand. Prosecutors also solicited false testimony & suborned perjured testimony during those hearings.

Defendant Coroners also omitted exculpatory material evidence from their investigation & report. See Exhibits 7,8,10, & 12.

Defendants including Victoria Scheber (A.K.A. V. Diles/Branaghan) & other John/Jane Does deliberately withheld material exculpatory evidence & fabricated false evidence knowingly, to obtain Plaintiff's arrest, detention, & prosecution. All Defendants individually, jointly, acted in concerts & in conspiracy.

All Defendant T.P.D. Officers, Prosecutors, Coroners, & John/Jane Does, were acting under color of law within the scope of their employment. Victoria Scheber is a private defendant however, "Private Defendant faced with 42 U.S.C.S. §1983 liability for conspiring with state officials to violate federal rights is not protected by doctrine of qualified immunity." Toussie v. Powell 323 F.3d 178, 2003 U.S. App. LEXIS 5393 (2d Cir. 2003).

"Where private parties conspired with prosecutor...cause of action under 42 U.S.C.S §1983 will be established...Conspiracy with prosecutor would provide element of action under color of state law, & selective nature of prosecution would constitute deprivation of constitutional right..." Macko v. Byron... (6th Cir. 1985).

24

# D. STATEMENT OF CLAIMS

"Where a private actor & the government engage in 'joint participation', putatively private conduct 'may be fairly treated as that of the state itself' & the actions 'fairly attributable' to the State." Understanding Civil Rights Litigation, 3rd Ed. Howard M. Wasserman 2023 pg. 38.

Defendant T.P.D. Officers, Prosecutors, & Coroners had a duty to intervene & prevent/stop infringement of Plaintiffs' constitutional rights but failed to do so. Defendant's misconduct led to continued unjust criminal detention & prosecution of Plaintiff against constitutional rights of the Fourth Amendment unreasonable seizure, & Fourteenth Amendment rights of Substantive & Procedural Due Process.

Plaintiff believes there is also evidence to show that T.P.D. Officers, Prosecutors, &/or other John/Jane Does tampered with physical evidence of the Nest Cam that captured the audio of the incident. Comparing the Nest Cam to witness testimony shows material alterations that were made to conceal exculpatory evidence & fabricate false inculpatory evidence. Expert analysis shows anomalies on the video that may be conclusive, that such alterations were made.

The misconduct described here was objectively unreasonable & reasonable Officers, Prosecutors, Coroners, & private persons in defendants' positions would have known that such acts/omissions were clearly against established constitutional rights.

See: "Moreover a §1983 conspiracy claim for using fabricated or false evidence was clearly established before 1999. See Anthony v. Baker 767 F.2d 657, 662 (10th Cir. 1985)." Bledsoe Supra.

"The prohibition on falsification or omission of evidence knowingly or with reckless disregard of the truth was firmly established as of 1986." Id.

Defendant Prosecutors & T.P.D. Officers both fabricated a false narrative of the shooting being over the Plaintiff allegedly upset about the dog being beat & selectively withheld/omitted exculpatory statements/evidence of Mr. Schmidt's threats & attempted attack in the W.A.A. & during the preliminary investigation to establish probable cause.

"Absolute immunity does not protect the act of fabricating evidence during the preliminary investigation of a crime." Bledsoe v. Vanderbuilt 934 F. Supp. 1112 (2019).

25

## D. STATEMENT OF CLAIMS

<u>Claims Ten & Eleven:</u> 42 U.S.C.S. §1983 – Malicious Prosecution & Unlawful Detention. State Law Claim C.R.S. 13-21-131, Colo, Const. Art. II, Section 7 (unlawful seizure), Section 25 (due process), Section 3 (inalienable rights). Malicious Prosecution.

<u>Claims Ten & Eleven Are Asserted Against These Defendants:</u> T.P.D., T.P.D. Officers Defendants, Prosecutor Defendants, Adams County.

<u>Supporting Facts;</u> Plaintiff incorporates all other facts/precedent of this complaint as if fully applied here & relies on them as setting part of this claim.

"Judicial precedent recognizes a malicious prosecution claim under the Fourth Amendment challenging pretrial detention without probable cause." Bledsoe Supra. Quoting Manuel v. City of Joliet 580 U.S. 357, 137 5.Ct. 911, 919, 197 L.Ed. 2d 312 (2017).

Defendant's while acting under color of law & in the scope of their employment, violated Plaintiff's right to be free malicious prosecution by: 1) causing Plaintiff's continued confinement & prosecution from 3/27/18 to present day, by fabricating alleged inculpatory statements & omitting exculpatory statements in reports & the W.A.A., manipulating witness testimony by subornation of perjury during the preliminary hearing, & P.E.P.G. hearings on remand on 2/2/24-4/24/24, thus falsely charging Plaintiff to the highest degree possible in order to deny Plaintiff bail resulting in unlawful detention & damages; 2) while the case is on remand, the original action terminated in Plaintiff's favor by way of direct appeal; 3) Had the material exculpatory information been included &/or false misleading information been excluded, it would have vitiated &/or diluted probable cause; 4) Defendants acted with malice as "For purposes of malicious prosecution claim, malice maybe inferred if a defendant causes the prosecution without arguable probable cause." Bledsoe Supra. Plaintiff contends if probable cause to the alleged charge actually existed Defendants would not have omitted exculpatory evidence & fabricated false testimony/suborned perjured testimony to material facts; 5) Plaintiff has suffered & continues to suffer ongoing damages.

Defendants were not only acting under color of law & under scope of their employment, but also pursuant to policy practice, customs &/or usage of the T.P.D. & Adams County Colorado District Attorney's Office & representative policymakers as set fourth in the Monell Claim.

Plaintiff was charged with first-degree murder by Defendants without proper due process in violation of constitutional rights, & violation of substantive & procedural due process safeguards, & violation of Fourth Amendment unreasonable seizure & the Fourteenth Amendment.

## D. STATEMENT OF CLAIMS

As outlined in more detail in the Reckless Investigation claim & applicable here, Defendants acted knowingly, maliciously &/or with deliberate or reckless indifference to Plaintiff's constitutional rights. Defendants individually, jointly, & in conspiracy with one another deprived Plaintiff of his right to be free from malicious Prosecution & the constitutional rights violations described in this complaint.

Defendants' acts/omissions were objectively unreasonable & against clearly established constitutional rights. As such reasonable officers in defendants' positions know or should have known of these constitutional rights violations.

"In the United States Court of Appeals for the 10th Cir., courts must take the common law elements of malicious prosecution as the starting point for the analysis of a 42 U.S.C.S. malicious prosecution claim. The ultimate question is whether the Plaintiff has proven a constitutional violation." Zamore Supra.

This malicious government action shocks the conscience, especially considering the totality of the circumstances that Plaintiff was a legally licensed conceal carry holder who still had his firearm on from earlier in the day. Plaintiff was a concerned citizen who heard the commotion of the incident of the dog being beat & upon looking out his window saw Mr. Schmidt ground & pounding the dog & a domestic violence incident of Ms. Branaghan push Mr. Schmidt off the dog, Mr. Schmidt push Ms. Branaghan back then begin to punch the dog again when Plaintiff then raised his upstairs window and yelled out "hey neighbor is everything alright" at which point Mr. Schmidt fled the scene & ran inside the home. Ms. Branaghan stated their dog was tied to a tether at the collar & jumped the fence & was choking on Plaintiff's side of the fence but was back over now. Based on Mr. Schmidt's physique (body builder who had been lifting for 25 years & takes steroids), Plaintiff thought the dog would be severely injured & ran outside to assess whether to call the cops. At the fence, the Plaintiff noticed the dog seemed okay & asked Ms. Branaghan if what he saw was correct, that Mr. Schmidt was hitting the dog, she responded yes. Plaintiff stated he understood their frustration, but they still couldn't beat the dog like that & if he saw it again, he would call the cops. Ms. Branaghan & the dog began to walk toward their home when Mr. Schmidt came back out to the backyard. Concerned, Ms. Branaghan may not relay the message of Plaintiff calling the cops if he saw Mr. Schmidt beating the dog again. Plaintiff asked Mr. Schmidt if he was beating the dog & that if he saw it again, he would call the cops. Mr. Schmidt immediately threatened Plaintiff with physical violence then attempted to attack Plaintiff by rushing towards the fence, appearing to be attempting to come over the fence while reaching back for a weapon. Plaintiff reacted in accordance with his training & being placed in imminent danger of death &/or bodily injury.

27

## D. STATEMENT OF CLAIMS

Plaintiff understands & agrees what happened was tragic & awful, but also that what happened was lawful & if he did not react in defending himself he would not be alive today &/or would have suffered permanent injury/disfigurement based on Mr. Schmidt's threats, attempted attack, appearance of reaching for a weapon, & physique/mind state of what lab testing shows to be an alcohol/anabolic steroidal rage, as he tested positive for these substances.

No matter the situation Plaintiff still should not be subjected to constitutional violations & substantial due process violations by trusted government officers in a position of power to violate rights in order to falsely accuse citizens of crimes to the highest degree possible, to hold them without bail & maliciously prosecute them by omitting exculpatory statements/evidence & fabricating evidence in their investigation, reports, & W.A.A. in violation of the Fourth Amendment unreasonable seizures & suborn perjured testimony in investigative/administrative phases of the proceedings in violation of substantive due process & the Fourteenth Amendment.

Assuming arguendo officials believe a crime was committed & want to make Plaintiff prove self-defense at trial, an analysis of similarly situated defendants in other Colorado counties, show said Defendants were not charged with first degree murder, see selection prosecution claim. During the first trial, Prosecutors requested instructions on second-degree murder. As such Plaintiff contends this shows Defendant Prosecutors knowingly overcharged Plaintiff.

When considered with Prosecutors knowing use/subornation of perjured testimony, not only does this show substantial due process violations & constitutional violations, but also violations of the Colorado Rules of Professional Conduct (C.R.P.C.) rule 3.3 Candor Toward the Tribunal: (a) A lawyer shall not knowingly: (1) Make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer…(3) offer evidence that the lawyer has offered material evidence & the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal…

The Prosecutors conduct is also a violation of C.R.P.C. rule 3.8 – Special Responsibilities of a Prosecutor: The prosecutor in a criminal case shall: (c) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;…(d) timely disclose to the defense all information known to the prosecutor, regardless of admissibility, that the prosecutor, regardless of admissibility, that the prosecutor also knows or reasonably should know tends to negate the guilt of the accused or mitigate the offense…

28

# D. STATEMENT OF CLAIMS

Defendants acted in concert with each other & explicitly or implicitly engaged in conspiracy to infringe Plaintiff's constitutional rights, such as but not limited to the right of the Fourth Amendment to be free from seizure based on false statements & omissions of material statements of facts in a W.A.A. & during judicial proceedings to establish probable cause that were preliminary investigating phases to establish probably cause such as the preliminary hearing & proof evident presumption great hearings.

Claims Twelve & Thirteen: 42 U.S.C.S. §1983/ §1985 Conspiracy; State Law Claim – C.R.S. 13-21-131, Colo Const. Art. II Section 7 (unlawful seizure), Section 25 (due process), Section 3 (inalienable rights) – Conspiracy

Claims Twelve & Thirteen Are Asserted Against These Defendants: All defendants & John/Jane Does

Supporting Facts: Plaintiff incorporates all other facts/precedent of this complaint as fully applied here & relies on them applicable in setting part of this claim.

All Defendants named in this complaint & other John/Jane Does that further discovery will reveal, were involved in the criminal case as discovery in that case shows &/or involved in the investigation/administrative phase & individually, jointly, in concert through explicit &/or implicit agreements conspired to violate Plaintiff's constitutional rights by concealing/omitting exculpatory evidence/statements & fabricating false evidence/statements in the W.A.A. & illicit false testimony/suborn perjured testimony to falsely establish probable cause, falsely charge Plaintiff with first-degree murder, held him in custody without bail & further conspire to violate Plaintiff's right to a fair trial.

These rights were firmly established substantial due process violations as well as Fourth Amendment rights from unreasonable/unlawful seizures, & the Fourteenth Amendment.

"Moreover a §1983 conspiracy claim for using fabricated or false evidence was clearly established before 1999. See Anthony v. Baker 767 F.2d 657 662 (10th Cir. 1985)" Bledsoe Supra.

Reasonable Officers in Defendants' positions know or should know that Plaintiff's constitutional rights were being violated in conspiratorial agreement & would have intervened to prevent the furtherance of such constitutional infringement.

## D. STATEMENT OF CLAIMS

"The United States Court of Appeals for the 10th Cir. has recognized a 42 U.S.C.S. §1983 conspiracy claim, that is, a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of law.  Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability…" Bledsoe Supra.

Defendants were acting under color of law & in the scope of employment as well as pursuant to final policymakers & policy, customs, usage, & practice of the Thornton Police Department & City of Thornton Colorado, Adams County Colorado Seventeenth Judicial District Attorney's Office & Adams County Colorado & its Coroner's Office.

Defendants concealed their own & each other's known & reckless misconduct mentioned in this complaint to protect each other from liability for infringement of Plaintiff's constitutional rights with deliberate indifference.

T.P.D. chief of police Jim Baird is liable for acts/omissions of T.P.D. officers/employees acting under color of law & within the scope & course of their employment.

Adams County Board of County Commissioners & District Attorney Brian Mason is liable for his line prosecutors Chief trial Deputy Prosecutor Stephanie Fritts & prosecutor Kimberly Hinton as well as investigators Joe Maier & Ernie Romero & other potential John/Jane Does.

Defendant Monica Broncucia Jordon Adams County Chief Coroner is liable for Coroner Stephen Cina & other potential John/Jane Does at the Adams County Coroner's office.

"State coroner is not immune from suit under 42 U.S.C.S. §1983, where Plaintiff claims that he has been unlawfully imprisoned & detained in violation of his constitutional rights." Peter v. Stanczak 48 F.R.D. 426, 1969 U.S. Dist. LEXIS 13912 (D. Ill. 1969).

In addition to facts asserted in the Reckless Investigation claim, specifically in regard to Adams County Coroner Investigator Gary Rhoad's report that shows conspiracy by T.P.D. Officers & Prosecutors to omit/conceal exculpatory statements/evidence of Mr. Schmit's fence jump from all T.P.D./Prosecution investigators reports, discovery in case 18CR1190 shows T.P.D. Officers Heather Hatfield, Doug Parker, Ian Shaw, along with Prosecutor Stephanie Fritts & Investigator Joe Maier as well as Coroner Stephen Cina were all present at the autopsy of Mr. Schmidt.  All these Defendants knew of injuries to decedent's hands as shown in Exhibit 7 & 8 that have exculpatory & material value, yet the injuries were omitted in his reports & denied by him at trial (see Exhibit 10) & injuries to his hands denied by Prosecutors at the P.E.P.G. hearing on remand on 4/24/24 (see Exhibit 12).

## D. STATEMENT OF CLAIMS

This conspiracy & malicious prosecution started on 3/27/2018 & continues today as Plaintiff is in custody on a no bond hold. Plaintiff started a discovery view on 4/4/25 & was made aware of these violations.

Claim Fourteen & Fifteen: 42 U.S.C.S. §1983 – Selective/Vindictive Prosecution. State Law Claim- C.R.S. 13-21-131, Colo. Const. Art. II Section 7 (unlawful seizure), Section 25 (due process) Section 3 (inalienable rights) – Selective/Vindictive Prosecution

Claims Fourteen & Fifteen Are Asserted Against These Defendants: All Defendants & John/Jane Does

Supporting Facts: Plaintiff incorporates all other facts/precedent of this complaint as fully applied here & relies on them as applicable in setting part of this claim.

Similarly situated alleged criminal defendants having to defend themselves against government prosecution in homicide cases, when they had to act in self-defense, have been charged with less than first-degree murder if charged at all. See People v. Rao CO3 2022, Defendant charged with second-degree heat of passion-murder & charges later dismissed, & People v. Arellano 20CR619 Defendant charged with second-degree murder.

"Prosecutorial Vindictiveness is the impermissible selection of which charge to prosecute based on malicious motive or bad faith prosecution. 14 Robert J. Dieter, Colo. Prac. Criminal Practice & Procedure §2.141 (2d ed. 2004)" People v. Butler 224 p.3d 380 COA 2009.

"Vindictive prosecution has been defined by the United States Court of Appeals for the Seventh Circuit as behavior that results from 'specific animus or ill will' or that occurs when a prosecutor charges a more serious violation…in retaliation for the exercise of a legal or constitutional right in connection with the original charge: United States v. DeMichael 692 F.2d 1059 1061-62 (7th Cir. 1982)" Catholic University Law Review p 856 [vol. 59: 855, 2010] Melodie Bales.

Plaintiff contends the evidence in the related case 18CR1190 supports a clear case of self-defense & under the Second Amendment of the United States, as well as under Article II section 13 of the Colorado constitution, self-defense is a constitutionally protected right. It is also a legal statutory right under C.R.S. 18-1-704. Plaintiff should not be subjected to constitutional due process violations described in this complaint for exercising this right in necessity when he was placed in direct & imminent danger of death &/or great bodily injury by a man who was legally drunk, on steroids at the time, appeared to have a weapon while coming at him right after threatening him because Plaintiff told him he would call the cops if he sees his illegal actions again.

31

# D. STATEMENT OF CLAIMS

Plaintiff contends he is being impermissibly charged with first-degree murder & subjected to due process & constitutional violations stated in this complaint in bad faith & malicious motive/ill will because of his exercise of his constitutional & statutory right of self-defense when faced with imminent danger of death &/or great bodily injury, as part of his vindictive prosecution claim.

Plaintiff also contends there is evidence on the record at the 8/15/23 hearing of Prosecutors referencing Plaintiff's socioeconomic class & being college educated by stating "Plaintiff had more opportunities than others" that could show discrimination based on an arbitrary classification & if allowed discovery to better research this claim via statistical analysis by race/gender, that may show race &/or gender discrimination.

"In particular the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including of protected statutory & constitutional rights." Wayte v. United States 470 U.S. 598 105 S. Ct. 1524 84 L.Ed. 2d 547 (1985)

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, & for an agent of the state to pursue a course of action is to penalize a person's reliance on his legal rights is 'patently unconstitutional'." Bordenkircher v. Hayes 434 U.S. 357, 365, 98 S. Ct. 663, 669 54 L.Ed. 2d 604 (1978)

"Selective Prosecution is a claim that the prosecutor has brought a criminal charge for a forbidden reason, such as race or religion that violates equal protection." Butler Supra at 384.

"…in certain limited contexts, courts have accepted statistics as proof of intent to discriminate. McClasky 481 US 292 at 293" People v. Mitchell COA 7 2024.

"…Discriminatory purpose can be shown by either direct or circumstantial evidence. Deberry 430 F.3d at 1299" Mitchell Supra.

Assuming arguendo (if ignoring the facts that T.P.D. Officers, Coroners, & Prosecutors omitted exculpatory evidence from most reports/investigations, & that Prosecutors used/suborned perjured testimony, all of which the exhibits in this complaint show) an alleged crime was committed as Officers & Prosecutors contend, then Colorado precedent of a man allegedly shooting his neighbor over the fence because of an argument over a rock throwing incident, see People v. Padilla 639 P.2d 15 (Colo. 1981), was charged with alleged second-degree murder.

32

## D. STATEMENT OF CLAIMS

This could (albeit incorrectly when considering truth of facts & the omitted exculpatory evidence) be an allegedly similarly situated defendant.

"…defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them. United States v. Deberry 430 F.3d 1299 1301 (10th Cir. 2005)." Mitchell Supra.

"The threshold question in any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated." Id.

In addition to the cases of Arellano, Rau & Padilla, Defendant also points to Smiley CO36 2023 in which Adams County Prosecutors Sua Sponte reduced a homeless Caucasian man's charge of first-degree murder to second-degree murder. These facts/cases illustrate a "credible showing necessary to obtain discovery…" United States v. Buzzard 2023 LEXIS 66429

Plaintiff has been incarcerated for over seven years & is of limited resources to better research/litigate this claim. As such, these factors should favor the request for additional discovery. Plaintiff also contends "The defendant need not establish a prima facie case of Selective Prosecution to obtain discover on these issues." United States v. James 257 F.3d 1173, 1178 (10th Cir. 2009)

Plaintiff requests discovery from Adams County Prosecutors & T.P.D., as well as the Colorado State Judiciary, on information including but not limited to: Arrests/investigations of alleged homicides, including Officer involved shootings pursuant to C.R.S. 20-1-114/16-2.5-301, resulting charging decisions, plea agreements & resolution/outcomes of said cases, including remand cases & pleas/outcomes on remand from 2000-2025. Plaintiff also requests this data from surrounding counties & El Paso County.

-Information regarding the gender & race of defendants in said cases & arrest reports/affidavits supporting probable cause.

-Any reports/findings into alleged misconduct of all T.P.D., Prosecutors, Coroners &/or any & all other State/Federal Officers/Officials who were involved in this case, including but not limited to internal affairs/citizen complaint investigations & professional misconduct investigations.

"Courts have the authority to inquire into charging decisions to determine whether the prosecution is abusing her awesome power to favor or disfavor groups defined by their gender…Title VII's prohibition of discrimination because of sex protects men as well as women." People v. ex. rel. T.B. COA 151 M 2016.

33

## D. STATEMENT OF CLAIMS

-Plaintiff also requests discovery and his case file from Prosecutors & T.P.D. officials in his case 18CR1190 in Adams County District Court, as well as similar cases.

<u>Claims Sixteen & Seventeen:</u> 42 USCS §1983 & 1981 Equal Protection/Equal right under law. State Law Claims C.R.S. 13-21-131, Colo. Const. Art. II, Section 7 (unlawful seizure). Section 25 (due process) & Section 3 (inalienable rights) – Equal Protection.

<u>Claims Sixteen & Seventeen Are Asserted Against These Defendants:</u> Defendant T.P.D. Officers & Defendant Prosecutors

<u>Supporting Facts:</u> Plaintiff incorporates all other facts/precedent of this complaint as fully applied here & relies on them as applicable in setting part of this claim.

Relying heavily on the facts/precedents in the Selective/Vindictive Prosecution claim, Plaintiff contends a violation pursuant to 42 U.S.C.S. §1981 & 1983 as well as pursuant to United States & Colorado precedent, shows an Equal Protection violation &/or will more clearly show said violation when allowed to analyze the requested discovery mentioned in the Selective/Vindictive Prosecution claim.

Specifically, Plaintiff contends & always has asserted, that his reaction was necessary to protect himself from imminent death &/or great bodily injury & self-defense is authorized by constitutional & statutory law covered in his conceal carry license training. Plaintiff has Bachelor of Science degrees in Biochemistry & Botany & was in the process of trying to start a consulting business with hopes of paying off his student loans, growing the business to try & help employ others, & better the community. Almost nothing is more important to Plaintiff than not being wrongfully labeled as a Felon & being able to be a productive member of society, for the betterment of society, except being able to care for his remaining family. As such, & in limited regards to this claim & the selective/vindictive prosecution claim, Plaintiff was willing to take a time served manslaughter plea, something two different attorneys told him is common in self-defense cases on overturned remand cases. Plaintiff was not afforded this plea as similarly situated people were.

Per 42 U.S.C.S. §1981 – Equal right under the law (a) Statement of equal rights. "All persons within the jurisdiction of the United States shall have the same right in every state…to full & equal benefit of all laws & proceedings for the security of persons & property as it is enjoyed by white citizens & shall be subject to like punishment…"

34

## D. STATEMENT OF CLAIMS

"…a prosecutor's discretion to bring charges is constrained by the Equal Protection clause of the Fourteenth Amendment.  United States v. Armstrong 517 U.S. 456, 464 (1996) …Equal protection of laws guarantees that persons who are similarly situated will receive like treatment by the law…" Mitchell Supra at P20.

Plaintiff contends precedent of United States v. Arnett 2023 LEXIS 196892 stating "The Supreme Court has recognized that a claimant can also establish an equal protection claim without alleging class-based discrimination if 'he instead claims [he] has been irrationally singled out as a so called 'class of one.'"", maybe relevant.

Claim Eighteen: 42 U.S.C.S. §1983 – Monell v. Dept. of Soc. Servs. (1978) – Final Policymakers, Ratification, Unconstitutional Official Policy Practice, Customs, &/or Usage, & Failure to Train & Supervise.

Claim Eighteen is Asserted Against These Defendants: Adams County, Board of County Commissioners of Adam County, Defendant District Attorney Brian Mason & Chief Trial Deputy District Attorney/Prosecutor Stephanie Fritts, both in their official capacity, City of Thornton, Thornton Police Department (T.P.D.), T.P.D. Chief of Police Jim Baird in his official capacity, & Head/Chief Adams County Coroner Monica Broncucia Jordon in her official capacity.

Supporting facts: Plaintiff incorporates all other facts/precedent of this complaint as fully applied here & relies on them as applicable in setting part of this claim.

Defendants named above all have duties to train & supervise Officers, Line Prosecutors, Investigators & other personnel.  Defendants intentionally &/or recklessly &/or with deliberate indifference to Plaintiff's constitutional rights, failed to ensure through usage, custom, policy, practice, training &/or supervision of Officers, Line Prosecutors, Investigators, &/or other personnel would conduct proper, constitutionally adequate investigations, not fabricate inculpatory evidence/omit exculpatory evidence, ensure suspects would not be maliciously prosecuted & that W.A.A.'s & arrest warrants/procedures for establishing probable cause would not contain false misleading fabricated information, omit exculpatory information, & use false/suborned perjury testimony to establish probable cause & bind alleged defendants over for trial & follow substantial due process procedures & the duties imposed by Franks v. Delaware 438 U.S. 154 (1978).

35

# D. STATEMENT OF CLAIMS

Defendants also failed to ensure during the investigation phase that evidence would be properly preserved, documented, handled, analyzed & tested as well as report forensic evidence & follow up on said evidence (see Reckless Investigation claim for specific details including but not limited to blood spots on Plaintiff's side of fence reported by C. Parker but never further investigated by other T.P.D. Officers &/or Prosecutor Investigators).

Evidence of 911calls/dispatch recordings have also been selectively withheld & not completely provided.  Defendants also failed to ensure their Officers, Line Prosecutors, Investigators &/or other personnel would not jointly participate in conspiracy to deprive plaintiff of constitutional rights & see the conspiracy to an unfair trial.

Said Defendants &/or other final policy makers had noticed such failures to train, supervise, & provide policy to their employees yet failed to do so despite the obvious need that such training/supervision was required to safeguard citizens, such as Plaintiff, against infringement of constitutional rights.

On 6/10/25 emails were sent to the T.P.D.  and the 17th Judicial District Adams County Colorado, through their web site messaging portal asking for an investigation and to bring these issues to the attention of Chief of Police Jim Baird and District Attorney Brian Mason, no response was made.

Defendants knew/know that their employees were/are in positions of power & trust, & that failing to properly train & supervise would undoubtably lead to violations of constitutional rights.Said Defendants developed & maintained policies, customs, practices, & usages, knowingly & with deliberate indifference to citizen's rights which caused the violations of Plaintiff's rights stated in this complaint.

Plaintiff's injuries were caused by Defendants' policies, customs, practices, and usages of regularly failing to disclose/investigate/document/report exculpatory evidence & fabricate false evidence including but not limited to witness statements on W.A.A. to falsely establish probable cause & subornation of perjured testimony, in violation of substantive due process & the Fourth, Fifth, & Fourteenth Amendment.

The misconduct described in this complaint & in this claim were/are so well-settled & regularly used to constitute the de facto policy of Defendants, & such customs & usages were "consistent & widespread practices so permanently established as to have the practical force of policies…or regulations, although never enacted into formal law."  Understanding Civil Rights Litigation, H. Wasserman Supra page 182.

36

## D. STATEMENT OF CLAIMS

Said Defendants also failed/declined to implement sufficient legitimate mechanisms for actual review & oversight of accountability/punishment for such misconduct of their employees to the extent that they effectively ratified this type of conduct thus establishing it as the norm.

Defendant Jim Baird, acting in official capacity as the Chief of Police for the T.P.D., City of Thornton in Adams County Colorado, ratified the misconduct of T.P.D. Officer Defendants, Brian Mason acting as elected District Attorney for the Seventeenth Judicial District in Adams County Colorado & acting in his official capacity ratified the misconduct of Defendant Prosecutors.

Defendant Jim Baird's ratification constituted the official policy of the T.P.D., City of Thornton, & Board of County Commissioners of Adams County.

Defendants Brian Mason & Stephanie Fritts ratification constituted the official policy of the Seventeenth Judicial District Attorney's Office, the Board of County Commissioners of Adams County, & Adams County Colorado.

Plaintiff was deprived of his constitutional rights as mentioned in this complaint by Defendants acting in their official capacities, under color of law in their scope of employment & as final policymakers regarding this claim.

Defendant prosecutors also held the unconstitutional policy/customs/usages/practices of using erroneous reasonable doubt analogies to lower their burden of proof/switch the burden to defendants, as the overturned convictions in Adams County show.

Plaintiff also contends the T.P.D., Adams County Coroner Office, and the Seventeenth Judicial District, District Attorney's Office in joint participation hold the customs, policy, and practices of over-charging and/or withholding/omitting exculpatory evidence from alleged defendants in order to initiate alleged criminal prosecutions, deny them to a reasonable bail, and fair trial.

Claim Nineteen & Twenty: 42 U.S.C.S. §1983 – False Arrest. State Law Claim – C.R.S. 13-21-131, Colo. Const. Art. II Section 7 (unlawful seizure), Section 25 (due process), Section 3 (inalienable rights) – False Arrest.

Claims Nineteen & Twenty Are Asserted Against These Defendants: Defendant T.P.D. Officers & Defendant Prosecutors

37

# D. STATEMENT OF CLAIMS

<u>Supporting Facts:</u> Plaintiff incorporates all other facts/precedent of this complaint as fully applied here & relies on them as applicable in setting part of this claim.

Defendant T.P.D. Detectives John Casey Browning & Doug Parker had a chance to review Plaintiff's 911 call & hear Victoria Branaghan's statements justifying why Mr. Schmidt threatened Plaintiff, See Exhibit 16. Defendants knowingly excluded this exculpatory evidence as they knew it would vitiate/dilute probable cause to the alleged charge of first-degree murder. A reasonable Officer in Defendants' positions would have known this right was clearly established & would not omit exculpatory facts on a W.A.A. & fabricate inculpatory statement to establish probable to the highest charge possible to deny Plaintiff bail & be subjected to prosecution for an alleged crime he didn't commit.

"A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." Cronick v. Pryer 99 F. 4th 1262 (2024)

"Whether probable cause exists is determined by looking at the totality of the circumstances, based on what an objective Officer would have known in the situation." Id.

Plaintiff contends that based on the totality of the circumstances & proof as shown by Exhibit 16 that Detective Browning authored the under oath W.A.A. & knowingly left out exculpatory evidence & fabricated inculpatory evidence that the circumstances show there was no probable cause to the alleged charge of first-degree murder.

"If an officer submitted an affidavit that contained statements, he knew to be false or would have known were false, had he not recklessly disregarded the truth…not only is his conduct the active cause of the illegal arrest, but he can't be said to have acted in an objectively reasonable manner." Zamora Supra.

38

E. PREVIOUS LAWSUITS

1) Names of defendants: Thomas J. Hammond & Lester Nieves

Docket number & court: 21CV48 Adams County Colorado

Claims raised: Malpractice

Disposition: Stayed

2) Please note: Plaintiff in this case is a defendant in the case cited below but filed counter claims. The lawsuit was filed by eyewitness Victoria Branaghan, the Docket number & court is 19CV30601. Adams County Colorado. The counter claims raised are defamation of character, abuse of process, infliction of emotional distress, & false imprisonment. The case is currently stayed.

39

## G. REQUEST FOR RELIEF

As a proximate cause of Defendants misconduct Plaintiff has been incarcerated for over seven years for a crime he did not commit & is facing a retrial. Plaintiff was in county jail from 3/27/18 – 6/20/19, CDOC from - 6/20/19 – 11/15/23 & back to county jail from 11/15/23 – present. Plaintiff has suffered & continues to suffer great anguish, severe anxiety, emotional distress, depression, insomnia, loss of ability to live a normal life, loss of liberty, lost of familial association, loss of the ability to pay his student loans & damages of accumulated interest, loss of property, has tested positive for covid-19 twice, has worsening degenerative spinal disk disease/chronic back pain, sciatica, & Plaintiff's name has been tarnished beyond repair & had to pay restitution.

Plaintiff requests this honorable court enter judgment for him & against Defendants, granting:

-Punitive & compensatory damages for the private attorney fees he was able to secure through a private family loan for private attorney fees during the first trial in case 18CR1190, damages for loss of enjoyment of life, emotional distress, humiliation, past/future income/business earnings, & other pain & suffering on all claims allowed by law in an amount of similarly situated Plaintiffs &/or such amount set by jury.

-Economic losses on all claims allowed by law in the amount of similarly situated Plaintiffs &/or such amount set by jury.

-Special damages and injunctive relief, including but not limited to, requiring the Thornton Police Department & Seventeenth Judicial District Attorney's Office to undergo ethics training & require adequate training & supervision to prevent ongoing & future infringement of Plaintiff's & other citizens constitutional rights & conspiring to do so.

- Prospective/Equitable/Injunctive relief against all named defendants to correct the wrongs they have committed thus far & to prevent future infringement & misconduct in violation of due process & constitutional rights & any further relief this Honorable Court deems just & proper in the interest of justice & equity.

"...Federal courts may intervene in state criminal proceedings, either by way of declaratory relief or by injunction, only where there has been a showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief...A colorable claim that a second trial will violate a defendants double jeopardy right is a preeminent example of one of the very few extraordinary circumstances..." Gilliam v. Foster 75 F.3d 88 (1986).

40

## G. REQUEST FOR RELIEF

The plaintiff has tried submitting a Double Jeopardy claim based on the previous Judicial/Prosecutorial misconduct that could be considered overreaching & could bar retrial.

"The State with all its resources & power should not be allowed to make repeated attempts to convict an individual for an alleged offense thereby subjecting him to embarrassment, expense, & ordeal & compelling him to live in a continuing state of anxiety & insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." United States v. Dinitz 424 U.S. 600, 606 (1976).

Plaintiff cites to both United States Supreme Court precedent & Colorado precedent in his Double Jeopardy motion. The plaintiff contends the facts & law presented in that motion should also be considered when considering appropriate injunctive/equitable relief. The motion is attached as Exhibit 24.

Plaintiff also asks that an investigation to the Department of Justice pursuant to 18 U.S.C. §242 be recommended if Defendants do not correct their wrongs & continue with their constitutional violations.